UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────
№ 05-CV-4399 (JFB)
───────────────────

GABRIEL WHEELER,

         Petitioner,

VERSUS

WILLIAM E. PHILLIPS,

         Respondent.
───────────────────

MEMORANDUM AND ORDER
August 15, 2006
───────────────────

JOSEPH F. BIANCO, District Judge:

Gabriel Wheeler petitions this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction following trial of two counts of Robbery in the First Degree, Robbery in the Second Degree, Criminal Possession of a Weapon in the Second Degree, two counts of Criminal Possession of a Weapon in the Third Degree, and Criminal Possession of Stolen Property in the Fifth Degree. For the following reasons, the petition is denied.

I. BACKGROUND

A. The Underlying Facts

The evidence at Wheeler's trial demonstrated the following facts. On June 9, 1999, at approximately 3:25 a.m., on 100th Street near the corner of Northern Boulevard, Wheeler and his co-defendant, Manny Davis, stopped Melvin Grant and Leonardo Blanco as they were walking to Blanco's car. (Trial Transcript (hereinafter "Tr.") at 730-33.) Wheeler and his co-defendant approached Grant and Blanco and asked them the time and where they could get a cab. (*Id.*) Wheeler ran in front of the men and brandished a gun in front of Blanco. (*Id.* at 733.) Co-defendant Davis ordered Grant to lie down on the ground as Davis went through each man's pockets. (*Id.* at 738-40.) Davis took the men's money, keys, wallet and gold chain. (*Id.*) Blanco was then ordered to lie down next to Grant, and Wheeler and Davis left the area. (*Id.* at 741-42.) Wheeler and

Davis were stopped ten minutes later by the police when the cab they were in was being driven erratically. (*Id.* at 478-80.) The police recovered a plastic shopping bag from the back of the cab which contained a loaded, defaced chrome-plated handgun. The bag also contained Blanco's wallet and beeper, as well as Grant's beeper. (*Id.* at 482-84, 787-89.) Police also found Blanco's gold chain around Wheeler's neck. (*Id.*) Blanco and Grant arrived at the scene within fifteen minutes of the robbery, and they identified Davis and Wheeler as the men who had robbed them. (*Id.* at 773-74.)

B. Pre-trial and Trial Procedures

Wheeler was charged with four counts of Robbery in the First Degree, four counts of Robbery in the Second Degree, Criminal Possession of a Weapon in the Second Degree, two counts of Criminal Possession of a weapon in the Third Degree, and Criminal Possession of Stolen Property in the Fifth Degree. (*Id.* at 56-64.) The People presented Wheeler and his co-defendant with a joint plea bargain that offered them a sentence of ten years in exchange for pleading guilty. Because Wheeler's co-defendant refused to accept the plea, Wheeler was precluded from accepting the plea, and the case went to trial. After a jury trial, Wheeler was convicted of two counts of Robbery in the First Degree, Robbery in the Second Degree, Criminal Possession of a Weapon in the Second Degree, two counts of Criminal Possession of a Weapon in the Third Degree, and Criminal Possession of Stolen Property in the Fifth Degree. (*Id.* at 1195-97.)

C. Sentencing

At the time this crime was committed, Wheeler was on parole from a 1995 conviction for Robbery in the Second Degree. At sentencing, Wheeler was adjudicated a second violent felony offender according to New York Penal Law. (Sent. Tr. at 4-6.)[1] Wheeler was sentenced to concurrent terms of fifteen years for Robbery in the First Degree, fifteen years for Robbery in the Second Degree, twelve years for Criminal Possession of a Weapon in the Second Degree, three and one-half years for Criminal Possession of a Weapon in the Third Degree, and one year for Criminal Possession of Stolen Property. (*Id.* at 16-17.)

D. State Appeals/Post Judgment Motions

Wheeler appealed his conviction to the Appellate Division, Second Department. Wheeler claimed that: (1) he was denied the right to a jury of his choice when the trial court improperly discharged two sworn jurors; and (2) the court was vindictive when it sentenced Wheeler to fifteen years rather than ten years, which was offered by the People as part of a plea bargain. (*See* Petitioner's Appellate Division Brief ("Pet'r App. Brief"), Ex. A.) On May 19, 2003, the Appellate Division affirmed the conviction, finding that the trial court properly exercised its discretion in discharging two sworn jurors on the ground that they were unavailable for continued service, and that the court did not impose an enhanced sentence because Wheeler exercised his right to trial. *People v. Wheeler*, 767 N.Y.S.2d 638 (App. Div. 2003). On February 25, 2004, the New York Court of Appeals denied Wheeler permission to appeal further. *See People v. Wheeler*, 777 N.Y.S.2d 34 (2004).

On November 5, 2004, Wheeler moved

---

[1] References to "Sent. Tr." are to the transcript of Wheeler's sentencing.

*pro se*, pursuant to Criminal Procedure Law section 440, for an order vacating his sentence. In his motion, Wheeler claimed that: (1) the trial court violated the applicable sentencing statute that adjudicated him a second violent felony offender; (2) his sentence as a second violent felony offender violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (3) his attorney provided ineffective assistance when he advised Wheeler not to challenge his adjudication as a second violent felony offender. (*See* Wheeler's first motion to set aside sentence ("Pet'r initial 440"), Ex. F.)

On January 18, 2005, New York Supreme Court Justice Sheri S. Roman denied Wheeler's petition. Justice Roman noted that Wheeler's adjudication as a second violent felony offender was based upon a conviction for Robbery in the Second Degree for which he was sentenced to an indeterminate term of imprisonment of 4-12 years on May 16, 1995. The crime for which Wheeler now stands convicted occurred on June 9, 1999, well after his prior conviction. Thus, the court found that Wheeler did not show that he was improperly sentenced according to the state sentencing statute. (*See* Court's Order denying Wheeler's initial 440, Ex. H.) The court also noted that the issue of Wheeler's enhanced sentence was previously raised on his direct appeal, and the court found the claim to be without merit. (*Id.*) Regarding Wheeler's *Apprendi* claim, the court found that *Apprendi* is not applicable to New York's enhanced sentences for persistent felony offenders. (*Id.*) The court also concluded that Wheeler's counsel was not ineffective for not requesting a predicate felony hearing because Wheeler did not state any grounds upon which his prior conviction could have been challenged or show how any such challenge could have been successful. (*Id.*) On May 17, 2005, the Appellate Division, Second Department, denied Wheeler's application for leave to appeal the court's decision. (*See* Appellate Division's first order denying leave, Ex. I.)

On February 23, 2005, Wheeler filed a second *pro se* motion for an order vacating his sentence. In this motion, Wheeler contended that his prior undischarged sentence should run concurrent to his newly-imposed sentence. (*See* Pet'r second 440 Ex. J.) In a Memorandum dated April 20, 2005, Justice Roman denied Wheeler's second motion, noting that because Wheeler was adjudicated a second violent felony offender, he was sentenced under New York Penal Law section 70.25(2)(a), which mandates that such a defendant's newly-imposed sentence must run consecutively with a prior undischarged sentence. (*See* Court's Order denying Wheeler's second 440 Ex. L.) On July 14, 2005, the Appellate Division, Second Department, denied Wheeler's application for leave to appeal the court's decision to the New York Court of Appeals. (*See* Appellate Division's second order denying leave, Ex. M.)

E. The Instant Action

On April 12, 2006, Wheeler filed a *pro se* petition with this Court for a writ of habeas corpus, raising the six claims that were submitted to the state courts and described above. The motion to proceed *in forma pauperis* was granted on October 11, 2005. On March 23, 2006, the case was re-assigned to the undersigned from the Honorable Nicholas G. Garaufis. Oral argument was held regarding the instant petition on July 20, 2006.

3

## II. STANDARD OF REVIEW

To determine whether or not a Wheeler is entitled to a grant of writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id*; *see also Earley*, 451 F.3d at 74.

AEDPA establishes a deferential standard of review- "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 250 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)); *accord Earley*, 451 F.3d at 74.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *see also Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam); *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 277 (2d Cir. 2003). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*,

502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-37 (2d Cir. 2004); *Lydon v. Kuhlman*, 62 F. Supp. 2d 974, 977-78 (E.D.N.Y. 1999).

### III. EXHAUSTION OF CLAIMS

A state prisoner seeking federal habeas review of his conviction must ordinarily first exhaust available state remedies. *Daye v. Attorney General*, 696 F.2d 186, 190-91 (2d Cir. 1982); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Nelson v. George*, 399 U.S. 224, 229 (1970). The exhaustion doctrine requires a prisoner seeking habeas corpus to have given state courts a fair opportunity to pass upon his federal claim(s). *Daye*, 696 F.2d at 190; *see also Picard*, 404 U.S. at 275. Exhaustion of state remedies requires that a petitioner have presented his claim, setting forth the same factual and legal premises presented in his federal petition, to the highest state court from which a decision can be had. *Daye*, 696 F.2d at 191 (citing *Developments in the Law-Federal Habeas Corpus*, 83 HARV. L. REV. 1038, 1096 (1970)); *see also Grey v. Hoke*, 933 F.2d 117, 119-20 (2d Cir. 1991).

"A habeas petitioner's federal constitutional claims may be considered exhausted when the claims were 'fairly' – though not explicitly – presented to the state courts." *Holland v. Scully*, 797 F.2d 57, 64 (2d Cir. 1986) (citing *Daye*, 696 F.2d at 191); *see also Picard*, 404 U.S. at 275; *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (holding that petitioner's claim that "the evidence was insufficient" was sufficient to exhaust his claims); *Bennet v. Artuz*, 285 F. Supp. 2d 305, 311 (E.D.N.Y. 2003). The constitutional claim made in federal court "need not be identical with the one advanced to the state court, but it must be its 'substantial equivalent.'" *Fielding v. LeFevre*, 548 F.2d 1102, 1107 (2d Cir. 1977) (quoting *Picard*, 404 U.S. at 275, 277).

A habeas petition which contains both exhausted and unexhausted claims is known as a "mixed petition." When a petitioner submits a mixed petition to the court, the court may dismiss petitioner's unexhausted claim(s), stay consideration of the exhausted claim(s), and allow petitioner an opportunity to amend the petition after he returns to state court to satisfy the exhaustion requirement. *See Zarvela v. Artuz*, 254 F.3d 374, 379-82 (2d Cir. 2001); *see also Rhines v. Walker*, 544 U.S. 269, 275-88 (2005). However, the stay and abeyance procedure is only appropriate when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in state court. *Rhines*, 544 U.S. at 275-88. Even when such good cause exists for failure to present a state claim, it is an abuse of discretion for a district court to stay a petition containing unexhausted claims that are plainly meritless. *See id.*; *see also Bryant v. Grenier*, No. 02 Civ. 6121 (RMB) (RLE), 2005 U.S. Dist. LEXIS 28105, at *4-5 (S.D.N.Y. Nov. 15, 2005); *cf.* 28 U.S.C. § 2254(b)(2). The respondent correctly notes that, in lieu of the "stay and abeyance" procedure, the court may dispose of unexhausted claims on the merits, or may deny a mixed petition in its entirety. *See* 28 U.S.C. § 2254(b)(2).

The law is unsettled in the Second Circuit regarding the proper response to habeas petitions containing unexhausted claims. A majority of district courts in the Second Circuit dismiss unexhausted claims that are "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006);

5

*see, e.g., Naranjo v. Filion*, No. 02 Civ. 5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (footnote omitted) (citing *Hammock v. Walker*, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002); *Cruz v. Artuz*, No. 97-CV-2508 (FB), 2002 U.S. Dist. LEXIS 11150, at *25-26 (E.D.N.Y. June 24, 2002)).[2] Other federal district courts in the Second Circuit will dismiss an unexhausted claim if it does not raise a federal question. *See, e.g., Padilla v. Keane*, No. 00 Civ. 1235, 2000 WL 1774717, at *3 (S.D.N.Y. Dec. 4, 2000); *Orraca v. Walker*, 53 F. Supp. 2d 605, 611 (S.D.N.Y. 1999).

As discussed more fully *infra*, Wheeler has not exhausted the claims relating to his consecutive sentences as a second violent felony offender. Thus, this Court has the discretion to order stay and abeyance of Wheeler's mixed petition, to dismiss Wheeler's unexhausted claims on the merits, or to deny the mixed petition in its entirety. *See* 28 U.S.C. § 2254(b)(2). However, because the Court finds that Wheeler's unexhausted claims fail under both standards articulated by various courts in this Circuit for disposing of unexhausted claims, this Court declines to order stay and abeyance of the petition. Accordingly, the Court will dispose of each of Wheeler's individual claims, including his unexhausted sentencing claims, on the merits. *See Rhines*, 544 U.S. at 275.

IV. DISMISSAL OF JURORS

Wheeler claims that the dismissal of two jurors during his trial denied him his Sixth Amendment right to a jury of his choosing. Under the circumstances of this case, Wheeler's claim regarding the replacement of two jurors with the selected alternate jurors does not implicate constitutional concerns. *See Jones v. Greiner*, 01-CV-5276 (JBW), 2003 WL 22284142, at *13 (E.D.N.Y. Aug. 18, 2003) ("The decision to replace two jurors who would have delayed the trial does not raise a federal constitutional claim."); *see also Cabassa v. Filion*, No. 03 Civ. 2920 (DC), 2004 WL 1367503, at *7-8 (S.D.N.Y. June 16, 2004) (holding that dismissal of ill juror did not violate Sixth Amendment); *McCrary v. Artuz*, No. CV-95-622 (RJD), 1995 WL 728423, at *4 (E.D.N.Y. Nov. 28, 1995) (holding that discharge of an ill juror did not implicate constitutional concerns). More specifically, none of the facts alleged by Wheeler regarding the trial court's dismissal and replacement of two jurors with their alternates during his trial due to the dismissed jurors' unavailability raise a constitutional issue for federal habeas review. For example, there is no allegation that the replacement jurors were biased, or that some constitutional infirmity ensued as a result of the trial court's decision. In the absence of any such claim of prejudice, no constitutional concern is implicated and no basis for habeas relief exists.

However, even assuming *arguendo* that the dismissal of these two jurors does present a cognizable federal question for habeas review under the Sixth Amendment,

---

[2] Some courts have similarly articulated a "nonmeritorious" standard for disposing of unexhausted claims. *Basnight v. Keane*, No. 99-CV-5907, 2001 U.S. Dist. LEXIS 11555, at *15 (E.D.N.Y. July 31, 2001) (citing *Duncan v. Walker*, 531 U.S. 991 (Stevens, J., concurring in part and concurring in the judgment) ("AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims")); *see also Tatta v. Miller*, No. 05-CV-1205, 2005 U.S. Dist. LEXIS 25127 at *7 (E.D.N.Y. Oct. 27, 2005). This standard is sufficiently similar to the "patently frivolous" standard to categorize the two as one single test.

Wheeler's claims are meritless.

Decisions to dismiss jurors are reversed only in cases of "clear abuse" of the court's discretion. *Cabassa*, 2004 WL 1367503, at *7 (citing *United States v. Nelson*, 277 F.3d 164, 202 (2d Cir. 2002)); *see also United States v. Ruggiero*, 928 F.2d 1289, 1300 (2d Cir.), *cert. denied*, 112 S. Ct. 372 (1991); *United States v. Casamento*, 887 F.2d 1141, 1187 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081, 107 L.Ed.2d 1043, 110 S.Ct. 1138 (1990). Furthermore, "substitution of an alternate juror for reasonable cause . . . does not require the consent of any party." *United States v. Floyd*, 496 F.2d 982, 990 (2d Cir. 1974); *see also Edmonds v. McGinnis*, 11 F. Supp. 2d 427, 432 (S.D.N.Y. 1998). Any determination of fact made by the state court when deciding whether to dismiss a juror is entitled to a presumption of correctness. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983) (noting that the federal court must conclude that the state court's findings lacked even fair support in the record); *see also Bohan v. Kuhlmann*, 234 F. Supp. 2d 231, 243 (S.D.N.Y. 2003) (same). The petitioner may present clear and convincing evidence to rebut this presumption of correctness. *Id.*; *see also* 28 U.S.C. § 2254(e)(1).

The trial judge did not abuse her discretion by dismissing Juror 4, Mr. Rain, or Juror 4 (previously Alternate Juror 1), Ms. Zharnest, from the Wheeler trial. The trial judge followed the appropriate procedure pursuant to New York Criminal Procedure Law, which states that "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity . . . the Court must discharge such juror," and replace him with an alternative juror. N.Y. CRIM. PROC. LAW § 270.35. The trial court cited several reasons for the dismissal of each juror, none of which constituted an abuse of discretion under the applicable statute.

A. The Dismissal of Juror 4

On Wednesday January 17, 2001, Mr. Rain, Juror 4, notified the court that his grandfather had passed away. (Tr. at 642.) Due to the wake, funeral, and family obligations, Mr. Rain would not be available at all that week. (*Id.* at 634-35.)

The court discharged the juror, citing a number of factors, including that one and one-half days of trial would be lost, and time was important. (*Id.* at 649.) The court also worried that the trial could be further delayed if the juror suffered emotional distress upon his return on Monday. (*Id.* at 649.) Further delays were already postponing the trial, such as the defendant's religious observance on Fridays and a day lost because of absence of the defense counsel for medical reasons. (*Id.* at 651-52.) The jurors had not been voir-dired as to their availability for service the week after next. (*Id.* at 652.) Thus, the court discharged Mr. Rain and substituted an alternate juror. (*Id.* at 652.)

In *United States v. Domenech*, the Second Circuit found that the trial court did not abuse its discretion when it dismissed a juror who was ten minutes late to court. 476 F.2d 1229, 1232 (2d Cir. 1973) (reasoning that such dismissal was not an abuse of discretion and did not result in prejudice to the defendant); *see also Cabassa*, 2004 WL 1367503, at *7 (holding that court did not abuse its discretion when it dismissed a juror whose illness would prevent her from returning to court for four days). Although Wheeler contends that the delay due to Mr. Rain's absence was

7

insignificant, the trial court did not abuse its discretion; rather, the court reasoned that the one and one-half days that would be lost were important. Furthermore, New York state case law recognizes a "two-hour" rule whereby once a court concludes that there is no reasonable likelihood that the juror will be appearing within two hours after the time set for trial to resume, the juror may be discharged. *Id.* (citing *People v. Jeanty*, 94 N.Y.2d 507, 514 (2000)). Here, Mr. Rain was going to be unavailable for at least one and one-half days for which trial was scheduled, which would delay the trial far more than two hours.[3]

Furthermore, a petitioner challenging the dismissal of a juror must also demonstrate prejudice resulting from the substitution. *Cabassa*, 2004 WL 1367503, at *7 (quoting *Nelson*, 277 F.3d at 202); *see also Wray v. Johnson*, 202 F.3d 515, 525 (2d Cir. 2000) (noting that petitioner must show that error in dismissing juror had a "'substantial and injurious effect or influence in determining the jury's verdict'") (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)); *United States v. Gambino*, 951 F.2d 498, 503 (2d Cir. 1991) (holding that district court's discretion in dismissing juror should not be disturbed absent bias or prejudice to defendant) (internal quotation and citation omitted).

Wheeler suffered no prejudice as a result of the dismissal of Juror 4. In *Domenech*, when a juror was dismissed for being ten minutes late, the court held that there was no basis for finding an undue impact on the jury either in the mere act of excusing the juror or in the way it was done. *Domenech*, 476 F.2d at 1232. This Court would have to strain to identify any prejudice against Wheeler resulting from the trial judge's dismissal of Mr. Rain. Wheeler presents no evidence of any bias or prejudice suffered as a result of the substitution of Alternate Juror 1 for Juror 4, and thus his claim should be dismissed. *See Shepard v. Artuz*, No. 99 Civ. 1912 (DC), 2000 U.S. Dist. LEXIS 4975, at *16-18 (S.D.N.Y. Apr. 19, 2000) (rejecting petitioner's argument that trial court violated his due process rights by improperly replacing a juror due to petitioner's failure to show prejudice); *see also United States v. Millar*, 79 F.3d 338, 342 (2d Cir. 1996) (dismissing petitioner's claim for failing to show prejudice resulting from substitution of jurors).

---

[3] Wheeler cites *People v. Watkins*, 556 N.Y.S.2d 541 (App. Div. 1990) in support of his contention that a weekend adjournment of the trial is a relatively insignificant but reasonable and necessary price to pay to safeguard the important right at stake. However, *Watkins* is distinguishable from the present case. In *Watkins*, a sick juror called in ill on Friday morning and promised the court that he would call back after his condition was diagnosed. The trial judge discharged the juror slightly less than two hours later, without waiting for the promised phone call. The Appellate Division held that the trial judge ignored his responsibility to determine whether the juror's return was "reasonably imminent and certain." *Watkins*, 556 N.Y.S.2d at 546. The judge did not inquire into when the juror would be available at all. In the instant case, the trial judge spoke to Mr. Rain about his availability, and ascertained that Rain would be unavailable for at least one and one-half days for which trial was scheduled. Nor was Rain's return after the weekend guaranteed. In *Watkins*, at the time of the juror's unavailability, only one witness remained to be questioned and his continued availability was assured. In the instant case, the jurors had not been voir-dired as to their availability the week following the next, and other delays were already holding up the trial. Unlike the hasty decision made by the trial judge in *Watkins*, the decision of the trial judge in Wheeler's case was reached after the appropriate inquiries were made.

Wheeler further argues that the trial judge did not conduct a reasonably thorough inquiry before deciding to dismiss the juror. He contends that the judge should have asked Juror 4 about his relationship with his grandfather or his emotional state due to his grandfather's death.

However, the trial judge's determination of whether and to what extent a juror should be questioned regarding the circumstances of a need to be excused is also subject to a "clear abuse" of discretion standard of review. *Cabassa*, 2004 WL 1367503, at *7 (quoting *Nelson*, 277 F.3d at 202); *see also Ruggiero*, 928 F.2d at 1300; *Millar*, 79 F.3d at 342 (holding that district court did not abuse its discretion when it dismissed a juror whose father died suddenly during the trial without further inquiry).

The trial judge inquired into Juror 4's availability for the next few days and ascertained that Juror 4 would be unavailable for at least one and one-half days. The judge did not abuse her discretion by merely inquiring into the juror's availability because her decision to discharge Juror 4 was based on this one and one-half day delay. Furthermore, it is proper for a trial judge to consider whether a juror's return is ascertainable, certain and reasonably imminent when determining whether to discharge a juror. *See People v. Page*, 72 N.Y.2d 69, 73 (1988). It was appropriate for the trial judge to note that due to a death in the family and familial obligations, regardless of his relationship with his grandfather, Juror 4's return on Monday was not certain.

For these reasons, the trial judge did not abuse her discretion when she decided to dismiss Juror 4, Mr. Rain.

## B. The Dismissal of Juror 4 (Previously Alternate Juror 1)

On January 24, 2001, the trial judge was presented with a doctor's note from Juror 4 (previously Alternate Juror 1 who replaced discharged Juror 4, Mr. Rain), Ms. Zharnest. The note explained that Zharnest's four-year-old son had a severe illness. (Tr. at 1107.) After questioning the juror on the matter and hearing from all counsel, the court discharged Zharnest and replaced her with an alternate juror.

The trial judge did not "clearly abuse" her discretion when she decided to discharge Zharnest. *See Cabassa*, 2004 WL 1367503 at *7 (quoting *Nelson*, 277 F.3d at 202). A trial court does not abuse its discretion when it replaces a juror whose ability to deliberate may be affected due to personal circumstances. *See Edmonds v. McGinnis*, 11 F. Supp. 2d 427, 432-33 (1998) (holding that the court properly discharged a sworn juror who had a real estate closing in three days, after determining that she might have trouble concentrating during deliberations if she were not excused); *cf. Booker v. Girdich*, 262 F. Supp. 2d 264, 268-69 (S.D.N.Y. 2003) (holding that the state trial judge correctly did not discharge a juror upon determination that the juror's state of mind would not affect her deliberations).

Although Wheeler urges the Court to note that the juror said that she really wanted to deliberate and sought to fulfill her jury obligations, the trial judge noted (and Zharnest admitted) that Zharnest would not be able to concentrate if her son's fever went back up. (Tr. at 1112-16.) The trial court also observed that New York State rules required that all jurors be sequestered and that there would be no way to anticipate how long

deliberations would last. (*Id.* at 1116.) Accordingly, the court did not want any juror to feel rushed. (*Id.*) Because Zharnest did not feel comfortable with her husband watching her son and she had not gotten any sleep the previous night, the court was concerned as to whether Zharnest would be able to function as a juror. (*Id.* at 1112-18.) Because the trial court concluded that Zharnest's situation at home might affect her ability to deliberate, the court did not abuse its discretion when it discharged Zharnest.

Furthermore, Wheeler has failed to present any evidence to rebut the presumption of correctness accorded to the trial judge's determination and has failed to display any prejudice suffered as a result of the juror's dismissal. *See Gambino*, 951 F.2d at 503 (holding that reviewing court should not disturb trial judge's exercise of discretion in discharging a juror unless it resulted in prejudice to defendant); *see also Marshall*, 459 U.S. at 432 (holding that determinations of fact by trial judge entitled to presumption of correctness); *Rosa v. McCray*, 396 F.3d 210, 220 (2d Cir. 2005); *Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003).

In sum, because the discharge of jurors by the trial judge was not a "clear abuse" of her discretion, and because Wheeler has presented no evidence to show that he was prejudiced as a result of the judge's decisions, Wheeler's claims regarding the dismissal of jurors at his trial are rejected. There is no evidence of any violation of Wheeler's Sixth Amendment rights because of the discharge of these jurors, and habeas relief on these grounds is unwarranted.

V. VINDICTIVE SENTENCING

Wheeler claims that he was punished for exercising his Sixth Amendment right to a jury trial. Wheeler contends that his sentence was disproportionate to the plea bargain offered by the People and that no facts or circumstances justified this disproportionateness.[4] Wheeler further asserts that he was unable to accept the plea bargain because the prosecutor stipulated that both defendants must plead guilty to receive the decreased sentence, and his co-defendant refused to do so.

The Constitution guarantees the right to a trial by jury, U.S. CONST. amend. VI, and a state may not penalize a person for exercising a right guaranteed under the Constitution. *See Bordenkircher v Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). As set forth below, Wheeler was not punished for exercising his constitutional rights.

Plea bargains, which often require a defendant to choose between going to trial and pleading guilty in order to receive a reduced sentence, are an important and constitutional part of the criminal justice system. *See Corbitt v. New Jersey*, 439 U.S. 212, 218-19 (1978) ("[T]here is no *per se* rule against encouraging guilty pleas."). "The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow." *Bonner v. Smith*, No. 05-CV-4209 (JG), 2006 U.S. Dist. LEXIS 6925, at *25-26 (E.D.N.Y. Feb. 24, 2006) (quoting *McMann v. Richardson*, 397 U.S. 759, 769 (1970)). Although a defendant may

---

[4] The plea bargain proposed by the prosecution was for ten years. Wheeler was sentenced to fifteen years, which he notes is 50% greater than the sentence offered by the plea.

have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not always forbid requiring him to choose. *Brady v. United States*, 397 U.S. 742, 750 (1970); *see also Bonner*, 2006 U.S. Dist. LEXIS 6925, at *25-26 (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971)).

Before trial, a prosecutor has broad discretion to determine the extent of the societal interest in prosecution when formulating a plea bargain offer. *See United States v. Goodwin*, 457 U.S. 368, 382 (1982). When exercising that discretion, a prosecutor may determine that co-defendants should only be offered a "package" plea bargain, whereby if one co-defendant chooses to plead not guilty, the other co-defendant may not receive the lesser sentence offered for pleading guilty. *See "Big Black" [a/k/a Frank Smith] v. Regan*, 583 F.2d 72, 76 (2d Cir. 1978).[5] Furthermore, the prosecutor need not offer a plea bargain to defendants at all. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). Thus, there was nothing unconstitutional about the "package" plea bargain offered to Wheeler.

Furthermore, Wheeler was never entitled to performance of the plea bargain because his co-defendant chose to plead not guilty. Thus, the plea bargain became irrelevant at sentencing. Moreover, whether or not a defendant accepts a plea bargain, the sentence which a defendant will ultimately receive rests in the discretion of the judge, who may refuse to accept a guilty plea offered by the prosecutor to the defendant. *See Corbitt*, 439 U.S. at 221-22. At Wheeler's sentencing, the sentencing judge asserted that she never found any plea discussions between defendant and the Assistant District Attorney to be appropriate or valid; thus, regardless of whether the defendant desired to accept the plea or not and was merely unable to, the trial judge could still have ignored the agreement at sentencing.

The mere fact that the trial court, following conviction, imposed a higher sentence than the plea offer does not, in and of itself, establish actual vindictiveness. *See Naranjo*, 2003 WL 1900867, at *10 (citing *Corbitt*, 439 U.S. at 219, 223). The judge also never stated or implied that Wheeler's sentence was based on his failure to accept the prosecutor's plea offer.[6] *See Naranjo*, 2003

---

[5] In *"Big Black"*, the Second Circuit upheld an increased sentence imposed after defendant was unable to obtain lesser sentence as part of "package" plea bargain because his co-defendant would not plead guilty. *"Big Black" [a/k/a Frank Smith] v. Regan*, 583 F.2d 72, 76 (2d Cir. 1978) ("[T]here was no reason for the State, once it was required to try its case against one defendant not to go to trial against both. The advantage to the State of a 'package deal,' moreover, was that it would . . . dispose of the entire case."). *"Big Black"* is indistinguishable from the instant case, where, once Wheeler's co-defendant refused to plead guilty and the People was required to go to trial, the People would have nothing to gain by offering a plea bargain to the other co-defendant. Thus, it is reasonable that Wheeler would not be able to receive a reduced sentence merely as a result of his desire to accept the plea bargain, when his co-defendant was already forcing the People to bring the case to trial.

[6] Indeed, no statements by the sentencing judge indicated any vindictiveness as a result of the Wheeler's choice to go to trial. The trial judge relied on appropriate criteria, including the overwhelming evidence of the guilt of Wheeler and his past criminal record, in imposing Wheeler's sentencing.

WL 1900867, at *10 (denying habeas claim based on disparity between pre-trial offer of five to ten years and ultimate sentence of twenty-five to fifty years; such difference did not establish claim of actual vindictiveness because judge never suggested that sentence based on refusal of plea offer); *see also Archie v. Strack*, 378 F. Supp. 2d 195, 200-01 (W.D.N.Y. 2005) (rejecting habeas claim of defendant who turned down a plea bargain offer of four and one-half to nine years received a sentence of ten to twenty years; the court held that he did not make out a claim of actual vindictiveness because the judge never stated or implied that the sentence was based on his refusal of the plea offer).

Wheeler has not offered any evidence of vindictive sentencing beyond the fact of a discrepancy between the plea bargain offered to him and the actual sentence he received. A discrepancy between an offered plea bargain and the actual sentence alone does not make out a claim of constitutionally impermissible vindictive sentencing. *Bailey v. Artuz*, No. 94-CV-1240 (GJD/RSP), 1995 WL 684057, at *2 (N.D.N.Y. Nov. 15, 1995); *Pabon v. Hake*, 763 F. Supp. 1189, 1194-95 (E.D.N.Y. 1991) (holding that petitioner was not vindictively sentenced when only evidence of vindictive sentencing that petitioner presented was that the sentence he received was greater than promised sentence he rejected as part of plea bargain); *see also United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976) ("[L]enience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those who elect to stand trial.") (internal quotation and citation omitted); *Bonner*, 2006 U.S. Dist. LEXIS 6925, at *25-26 (holding that the imposition of a seventy-five year sentence when defendant was offered plea bargain of seven years did not establish a violation of defendant's Sixth Amendment right to trial by jury); *People v. Durkin*, 518 N.Y.S.2d 38 (App. Div. 1987) (holding that the fact that the trial court's sentence is greater than the People's offer does not automatically establish that defendant has been punished for asserting his right to a jury trial). Accordingly, Wheeler's habeas claim is denied.

## V. WHEELER'S ADJUDICATION AS A SECOND VIOLENT FELONY OFFENDER

Wheeler claims that the sentencing court failed to follow the proper procedure at his sentencing, and that, as a result, his rights were violated.

Construing Wheeler's claim broadly, as the Court is required to do with *pro se* petitions, the Court could conclude that Wheeler did exhaust his sentencing claim(s) because he "fairly presented" this issue to New York state courts. *See Daye*, 696 F.2d at 191; *see also Picard,* 404 U.S. at 275; *Holland*, 797 F.2d at 64; *Fama,* 235 F.3d at 809 (holding that petitioner's claim that "the evidence was insufficient" was sufficient to exhaust petitioner's claims); *Bennet v. Artuz*, 285 F. Supp. 2d 305, 311 (E.D.N.Y. 2003). "The state court will be alerted to the constitutional nature of a claim if the defendant has claimed the deprivation of a particular right specifically protected by the Constitution." *Daye*, 696 F.2d at 193. Here, Wheeler claims that his Fourteenth Amendment rights were violated by the state's sentencing procedure. This should have been sufficient to alert the state court to the federal nature of Wheeler's claim. *Id.* Thus, Wheeler's due process challenge is exhausted for purposes of federal habeas review. *See, e.g., Love v. Garvin*, 97-CV-4909 (SJ), 2004 U.S. Dist. LEXIS 16375, at *11 (E.D.N.Y.

Aug. 12, 2004).

Although Wheeler has framed his claims in federal terms, "not every defect in the sentencing process implicates the Constitution." *United States v. Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970) (finding no due process violation where a judge made a technical misstatement regarding the number of armed robberies of which the defendant had been convicted, as opposed to the number he had committed). However, where the court relies on misinformation or a misunderstanding about a defendant's criminal history, due process concerns are implicated. *See Townsend v. Burke*, 334 U.S. 736, 740-41 (1948) (finding that where either the prosecution overreached by submitting false conviction information to the sentencing judge, or the sentencing judge misread the record and relied upon materially false information, the defendant's sentence violated due process).

Wheeler brings several challenges to his sentence. Wheeler argues: (1) that his sentence violates the Supreme Court's holding in *Apprendi v. New Jersey*; (2) that the state violated the terms of the sentencing statute itself; and (3) that the sentencing judge did not adhere to the sequentiality requirement of the statute. The Court finds that these claims are meritless.

A. *Apprendi* Claim

Wheeler claims that his due process rights were violated when the court denied him his right to an enhancement hearing. He also contends that his equal protection rights were violated, as well as his Fourteenth Amendment rights, because the court's sentencing procedure violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S 466 (2000); *see also Blakely v. Washington*, 542 U.S. 296, 301-05 (2004) (holding that fact finding by sentencing judge, which increased the sentence that a defendant received beyond the maximum that could otherwise be imposed under the law violated the Sixth Amendment right to trial by jury).

As a threshold matter, Wheeler makes many claims regarding the constitutionality of New York's persistent felony offender statute. These claims are irrelevant because Wheeler was sentenced as a second violent felony offender under New York Penal Law section 70.04, not as a persistent felony offender.

Furthermore, Wheeler's *Apprendi* claims are meritless because his enhanced sentence as a second violent felony offender was based only on the fact of a prior conviction. This fact was admitted by Wheeler at sentencing. (Sent. Tr. 6.) *Apprendi* explicitly provides an exception for the fact of a prior conviction. 530 U.S at 490. Accordingly, Wheeler was not entitled to an enhancement hearing. *See James v. Artus*, No. 03 Civ. 7612, 2005 U.S. Dist. LEXIS 6402, at *71 (S.D.N.Y. Apr. 18, 2005) (holding petitioner's claim that his sentencing as a persistent violent offender, under New York Penal Law section 70.08, violated *Apprendi* as meritless because his enhanced sentence was based only on prior felony convictions); *see also United States v. Santiago*, 268 F.3d 151, 155 (2d Cir. 2001) (holding that defendant was not entitled to jury finding of prior convictions because *Apprendi* permits an exception for the fact of

a prior conviction).[7]

Second, *Apprendi* only applies to enhanced sentences that exceed the applicable statutory maximum. The maximum sentence that Wheeler could have received was twenty-five years. *See* N.Y. PENAL LAW § 70.02(b). Wheeler's sentence of fifteen years was well below the twenty-five year statutory maximum. Because Wheeler's sentence fell below the maximum, *Apprendi* was not violated. *See Thompson v. United States*, 3:04-CV-1321, 2005 WL 1173560, at *1 (N.D.N.Y. May 2, 2005) (holding *Apprendi* inapplicable to the case because petitioner's sentence of nine years fell well below the maximum term of imprisonment of forty years). Indeed, application of the second violent felony offender statute essentially only increases the minimum sentence that the court may impose; it does not affect the maximum penalty which Wheeler was eligible for based on his conviction. *See United States v. King*, 345 F.3d 149, 151-52 (2d Cir. 2003) (noting that fact finding by sentencing judge which imposes a mandatory minimum sentence, and does not increase the otherwise applicable statutory maximum does not trigger *Apprendi*'s requirements).[8]

Wheeler's *Apprendi* claim is meritless because his sentence was based on the fact of a prior conviction, and *Apprendi* held that enhanced sentences based only on the fact of a prior conviction do not require an enhancement hearing. Furthermore, Wheeler's enhanced sentence as a second violent felony offender did not increase the statutory maximum of twenty-five years.

B. Violation of the Statutory Procedure

At the outset, Wheeler claims that the People violated his rights by failing to follow the proper procedure under N.Y. Criminal Procedure Law section 400.21. However, section 400.21 provides the procedure for determining whether a defendant is a second felony offender. Wheeler was adjudicated as a *second violent* felony offender (Sent. Tr. 6.), and as such, was sentenced under section 400.15, not 400.21. *See* N.Y. CRIM. PROC. LAW § 400.15.

New York Criminal Procedure Law section 400.15 delineates the procedure for determining whether a defendant is a second violent felony offender. *See id.* In order to correctly adjudicate a defendant as a second violent felony offender, a statement must be filed by the prosecutor before sentence is imposed setting forth the date and place of each alleged predicate violent felony

---

[7] Wheeler's reliance on *Brown v. Greiner* in support of his claim is misplaced. *Brown* concerned the application of New York's persistent felony offender statute, rather than New York's second violent felony offender statute, New York Penal Law section 70.04. *See Brown v. Greiner*, 409 F.3d 523, 534 (2d Cir. 2005). Furthermore, *Brown* held that the determination of fact regarding whether a felony offender has two predicate convictions clearly falls within *Apprendi*'s "fact of a prior conviction" exception. *Id.* (citing *Apprendi*, 530 U.S. at 488-90). Thus, *Brown* contradicts Wheeler's position.

[8] Wheeler was found guilty (among other convictions) of two counts of Robbery in the First Degree, a Class B violent felony offense. *See* N.Y. PENAL LAW § 70.02(1)(a). The sentencing range for such an offense is five to twenty-five years. N.Y. PENAL LAW § 70.02(3)(a). Because he was sentenced as a second violent felony offender, his minimum possible sentence increased to ten years, while his maximum possible sentence remained at twenty-five years. *See* N.Y. PENAL LAW § 70.04(3)(a) ("For a class B felony, the term must be at least ten years and must not exceed twenty-five years.").

conviction. N.Y. CRIM. PROC. LAW § 400.15(2). The defendant must be given a copy of this statement and the court must ask him whether he wishes to controvert any allegation made therein. "Uncontroverted allegations in the statement shall be deemed to have been admitted by the defendant." N.Y. CRIM. PROC. LAW § 400.15(3).

In the instant case, the People presented the court with a predicate violent felony offender statement at sentencing. (Sent. Tr. at 4.) Wheeler's attorney had been presented with this statement prior to sentencing, and at sentencing, the sentencing judge read the statement aloud to Wheeler. (*Id.* at 4-5.) Wheeler himself admitted that he was the same person mentioned in the statement. He admitted to his prior conviction and stated that he did not wish to raise the constitutionality of his prior conviction. (*Id.* at 4-6.) Where the uncontroverted allegations in the statement are sufficient to support a finding that the defendant has been subjected to a predicate violent felony conviction, the court must enter such finding and when imposing sentence must sentence defendant in accordance with the provisions of section 70.04 of the Penal Law. N.Y. CRIM. PROC. LAW § 400.15(4). The sentencing judge abided by the procedures for sentencing a second violent felony offender. Accordingly, Wheeler's claim that the sentencing statute was violated is without merit.[9]

In order for Wheeler to establish that his sentencing violated due process, he must show that the judge relied on misinformation or a misunderstanding regarding his prior criminal record. *Townsend v. Burke*, 334 U.S. 736, 740-41 (1948); *see also Curras v. Pearlman*, 05-CV-886 (NGG), 2006 WL 1419407, at *5 (E.D.N.Y. May 19, 2006). In *Curtis*, when the petitioner failed to show that he had suffered any prejudice as a result of the way that the sentencing proceeding was conducted, his claim that the court's sentencing procedure violated his due process rights was denied. *See Curtis v. Fischer*, 387 F. Supp. 2d 218, 225 (W.D.N.Y. 2004); *see also Curras*, 2006 WL 1419407, at *5. Similarly, Wheeler has failed to show any prejudice suffered as a result of his sentencing proceedings. Wheeler was aware of the court's intention to sentence him as a second violent felony offender, and at his sentencing he admitted to the prior felony which formed the basis of his enhanced sentence. *See Curtis*, 387 F. Supp. 2d at 225. Furthermore, it appears that the sentencing court complied with the state sentencing procedure. *See id.* Accordingly, Wheeler's claim that the sentencing court failed to comply with the appropriate New York state sentencing procedure, or that it violated due process, is rejected.

---

[9] Furthermore, Wheeler was correctly adjudicated a second violent felony offender. Wheeler was convicted on May 16, 1995 of second degree robbery, which is a Class C violent felony offense. *See* N.Y. PENAL LAW § 70.02(1)(b). This is a predicate violent felony offense as defined in subdivision one of section 70.02 of the Penal Law. *See* N.Y. PENAL LAW § 70.04(1)(a). Wheeler admitted to his previous violent felony offense conviction at sentencing. In addition to his previous conviction, in the sentencing at issue, Wheeler was found guilty (amongst other convictions) of two counts of Robbery in the First Degree, a Class B violent felony offense, which plainly constitutes a second violent felony. *See* N.Y. PENAL LAW § 70.02(1)(a). Thus, Wheeler was properly sentenced under sections 400.15 and 70.04 of the Criminal Procedure Law and Penal Law, respectively, as a second violent felony offender. Wheeler received a sentence of fifteen years, which was within the penalty range for a second violent felony offender. *See* N.Y. PENAL LAW § 70.04(3)(a).

15

C. The Statute's Sequentiality Requirement

Wheeler claims that the court violated the sequentiality requirement of the applicable sentencing statute. Wheeler incorrectly states that he was sentenced under New York Criminal Procedure Law section 400.21 and New York Penal Law section 70.06 as a second felony offender. As noted earlier, Wheeler was properly sentenced under sections 400.15 and 70.04 of the Criminal Procedure Law and Penal Law, respectively, as a *second violent* felony offender. The sequentiality requirement of the Penal Law statute states that sentence upon a defendant's prior conviction must have been imposed before commission of the present felony. *See* N.Y. PENAL LAW § 70.04(1)(b)(ii). In the instant case, Wheeler was convicted on May 16, 1995 of Second Degree Robbery, which is a violent felony offense. *See* N.Y. PENAL LAW § 70.02(1)(b). Wheeler admitted at sentencing and admits in his motion that he was sentenced by the Broome County Supreme Court on May 16, 1995, to a term of four to twelve years. Wheeler's present felony was committed on June 9, 1999, well after May 16, 1995. Thus, the first conviction clearly occurred before the commission of the present felony, and the sequentiality requirement of Penal Law section 70.04 was properly followed.

VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Wheeler claims that he received ineffective assistance of counsel during his sentencing proceedings. Specifically, he argues that his counsel was ineffective because he did not challenge the constitutionality of Wheeler's previous conviction when Wheeler was sentenced as a second violent felony offender. For the reasons stated below, this Court finds that Wheeler's counsel was not constitutionally ineffective.

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel, that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[10]

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner*, 417 F.3d at 319 (quoting *Rompilla*, 547 U.S. 374, 389 (2005)).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means

---

[10] *See also Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) (reciting *Strickland* standard).

that the errors were of a magnitude such that it "undermines confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

This Court proceeds to examine each prong in turn, keeping in mind that a habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, Wheeler's claim fails to satisfy either element.

### A. Deficient Performance Inquiry

Wheeler argues that his counsel at sentencing was deficient because he alleges that his counsel advised Wheeler to waive his right to challenge Wheeler's prior conviction which was used in adjudicating Wheeler as a second violent felony offender.

Wheeler's claim should be dismissed because his claims regarding his enhanced sentence and the statute under which he was sentenced are meritless. Counsel cannot be deficient for failing to raise meritless claims at trial or on appeal. *See Thompson*, 2005 WL 1173560, at *1 (holding that when petitioner's claims on appeal were meritless, counsel's decision not to pursue the argument was not objectively unreasonable) (citing *Strickland*, 466 U.S. at 689-90); *see also James*, 2005 U.S. Dist. LEXIS 6402, at *71 (citing *Steele v. United States*, No. 04 Civ. 6918, 2005 U.S. Dist. LEXIS 4841, at *15 (S.D.N.Y. Mar. 29, 2005); *Gomez v. Duncan*, No. 02 Civ. 0846, 2004 U.S. Dist. LEXIS 89, at *34 (S.D.N.Y. Jan. 27, 2004)). Indeed, to challenge such a prior conviction without basis for doing so is frivolous.[11]

Wheeler incorrectly claims that the ABA Code of Professional Responsibility DR-7-104(a)(1) states that "for an attorney to advise his or her client to waive his constitutional right at one of the most critical stages of a criminal proceeding such as to challenge and conduct a hearing to the matter of being adjudicated a predicate violent felony offender would constitute a breach of professional ethics." (Pet'r Brief at 19.) It is unclear to which provision Wheeler refers. Disciplinary Rule 7-104(a)(1) addresses an attorney's communication with parties of adverse interest. ABA MODEL CODE OF PROF'L RESP., DR 7-104(a)(1). Moreover, the ABA Code of Professional Responsibility was

---

[11] In fact, counsel did provide effective assistance to Wheeler during sentencing. Counsel asked that sentencing be postponed due to the illness of Wheeler's son at that time. (Sent. Tr. at 2.) Counsel submitted a pre-sentence memorandum on Wheeler's behalf. (*Id.* at 3-4.) Counsel had previously reviewed the predicate violent statement submitted by opposing counsel and the second violent felony offender forms. (*Id.* at 4.) He asked the sentencing judge to take into account that Wheeler had wanted to plead guilty to the charges in order to take advantage of the State's proffered plea bargain, but was unable to do so because of his co-defendant's refusal to plead guilty. (*Id.* at 8.) Counsel further stressed that Wheeler "never wanted to put the court through [a trial]" and that Wheeler should not be punished for his co-defendant's unreasonableness. (*Id.* at 8.) Counsel noted that defendant's previous convictions were when he was a teenager and that defendant should have been treated as a youthful offender. (*Id.* at 10.) Counsel also noted that there was no violence used in the crime itself, no one was hurt and the property taken was all recovered. (*Id.* at 10.)

replaced by the ABA Model Rules of Professional Conduct in 1983. The Model Rules state that in his representation of a client, a lawyer may, "[w]here permissible, exercise his professional judgment to waive or fail to assert a right or position of his client." ABA MODEL RULES OF PROF'L CONDUCT, DR 7-101. Counsel could not have been expected to advise his client to raise a constitutional claim to a prior conviction when he had no grounds upon which to raise such a claim, nor to allege that it was not defendant himself who served the time, when defendant's fingerprints matched those of the person on the prior conviction certificate. (Sent. Tr. at 5.) Thus, counsel was not ineffective by failing to do so.

Because Wheeler's counsel need not have raised meritless claims regarding Wheeler's prior conviction and because counsel did in fact provide effective counsel at sentencing, the Court finds that the performance of Wheeler's counsel was not deficient.

B. Prejudice Inquiry

Wheeler's failure to show deficient performance disposes of his ineffective assistance claim. However, even if Wheeler were able to show that his counsel's performance was constitutionally deficient, his ineffective assistance claim would nevertheless fail because he has not met his burden to show that any such failure caused him prejudice. "In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative weight of error' in order to determine whether the prejudice 'reache[s] the constitutional threshold.'" *Somerville v. Conway*, 281 F. Supp. 2d 515, 519 (E.D.N.Y. 2003) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001)). The defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Wheeler's petition fails to state any prejudice that resulted from his counsel's failure to challenge his prior conviction. Wheeler suggests no basis on which his counsel could have challenged, let alone successfully challenged, the previous conviction. *See id.* Moreover, Wheeler was aware that he could challenge the constitutionality of his prior conviction. At sentencing, Wheeler was advised that he had the right to challenge his prior conviction, and advised that he had the right to claim that he was not the same person mentioned in the second violent felony offender statement. Wheeler was further informed that admission of his prior felony convictions could serve to increase his sentence for his present convictions. Armed with such knowledge, Wheeler presented no grounds at sentencing (and still now presents no grounds) under which his prior conviction could be challenged, and admitted to the prior conviction.[12] Wheeler has failed to establish a reasonable probability that "but for" his counsel's advice not to challenge his prior conviction, he would have successfully challenged the conviction and, in turn, received a lighter sentence. *See Davis v. Greiner*, 428 F.3d 81, 92 (2d Cir. 2005). Furthermore, any challenge that Wheeler was not the defendant convicted of the prior 1995

---

[12] Furthermore, even if Wheeler had shown that counsel was deficient for failing to challenge his previous conviction, this Court could not possibly find any prejudice because Wheeler admitted his prior conviction both in his first motion to set aside his sentence in state court and in his habeas petition. (*See* Pet'r initial 440, Ex. F; Pet'r Brief at 16.)

18

felony would fail because his fingerprints matched those of the defendant on the prior conviction certificate. (Sent. Tr. 5.) Consequently, Wheeler suffered no prejudice as a result of his lawyer's advice to waive his right to challenge the constitutionality of his prior conviction.

Thus, the state court's denial of Wheeler's ineffective assistance of counsel claim for lack of merit was not an "unreasonable application" of the *Strickland* standard. *See id.* (quoting *Aied v. Bennett*, 296 F.3d 58, 62 (2d Cir. 2002)).

## VII. CONSECUTIVE SENTENCES

Wheeler's final claim asserts that pursuant to New York Penal Law section 70.25(1)(a), unless the sentencing judge directs the sentences to run consecutively, Wheeler's undischarged sentence and his new sentence should run concurrently.

As a threshold matter, the State notes that Wheeler's claim regarding his consecutive sentences is unexhausted because it has not been fairly presented in federal constitutional terms to the "highest state court from which a decision can be had." (*See* Resp. Brief at 7.) Because this claim is unexhausted, Wheeler has presented the court with a "mixed petition." Although this Court has the discretion to deny a mixed petition under 28 U.S.C. § 2254(b)(2), the court finds that Wheeler's unexhausted sentencing claim fails under both standards for dismissing an unexhausted claim that have been articulated by courts in this Circuit: the claim is not a federal claim cognizable on habeas review and the claim is patently frivolous. Accordingly, this Court declines to order stay and abeyance of the petition. *See Rhines*, 544 U.S. at 275.

First, Wheeler does not present a federal claim that this Court may properly review. Issues regarding sentencing under state statutes are not federal claims, and thus are not cognizable on federal habeas review. *See Davis v. Herbert*, 02-CV-04908 (JBW), 2003 U.S. Dist. LEXIS 24121, at *45 (E.D.N.Y. Nov. 13, 2003) ("Whether the sentence could be consecutive was a matter of state law and raises no Constitutional issue.").

Wheeler's claim is also frivolous and meritless. Wheeler incorrectly states that section 70.25(1)(a) is applicable to his sentencing. Wheeler was actually sentenced under Penal Law section 70.25(2)(a), which applies when a defendant is adjudicated a second violent felony offender. The law plainly states that when a term of imprisonment is imposed pursuant to New York Penal Law section 70.04 as a second violent felony offender, and such person is subject to an undischarged term from a prior imposed sentence, the court must impose a sentence to run consecutively with the undischarged sentence. *See* N.Y. PENAL LAW § 70.25(2)(a). In a Memorandum dated April 20, 2005, denying Wheeler's application to vacate and set aside his sentence pursuant to Criminal Procedure Law section 440.20, the New York Supreme Court of Queens County corrected Wheeler's assertion that he had been sentenced pursuant to section 70.25(1)(a). (*See* Court's Order denying pet'r second 440 Ex. L.) Despite this, Wheeler again raised this claim in his habeas petition.[13]

---

[13] Wheeler's relies on *People v. Richardson*, 100 N.Y.2d 847 (2003), for the proposition that when the court is silent, the sentences must run concurrently. This is erroneous. The *Richardson* holding specifically applies to Penal Law section 70.25(1)(a), when a court does not specify whether an undischarged prior sentence and the instant sentence are to run concurrently or consecutively *and* the court has a choice over how

19

Because section 70.25(2)(a) dictates that second violent felony offender's prior and current sentences shall run consecutively, Wheeler's concurrent sentencing claim is denied.

## VIII. CONCLUSION

Wheeler has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is DENIED. Because Wheeler has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

---

JOSEPH F. BIANCO
United States District Judge

Dated: August 15, 2006
Central Islip, New York

---

the sentences are to run. *See Richardson*, 100 N.Y.2d at 851. Where the statute mandates consecutive sentences, a court's silence at sentencing is irrelevant. *See People v. Hansen*, 700 N.Y.S.2d 759 (App. Div. 1999) ("[B]ecause he was a second felony offender the sentencing court was without discretion to impose a sentence to run concurrently with that which he was serving on a prior assault conviction.") (citing N.Y. PENAL LAW § 70.25(2)(a)); *People v. Fucci*, 790 N.Y.S.2d 891 (App. Div. 2005) ("Since the defendant was sentenced as a second felony offender, the sentences imposed were required to run consecutively."); *In re Madison v. Goord*, 711 N.Y.S.2d 432 (App. Div. 2000) (sentencing defendant according to § 70.25(2)(a), which requires that the prior and current sentences run consecutively).

\* \* \*

The petitioner appeared *pro se* in this action. The attorneys for the defendants are Alyson Joy Gill, Esq., Assistant Attorney General, for Eliot Spitzer, Esq., Attorney General of the State of New York, 120 Broadway, New York, New York 10271.

20